The next case is 05-3327. Robert Martin v. Department of Justice. Mr. Boranek. Good morning, Your Honors. May it please the Court. Michael Boranek on behalf of the Department of Justice. Robert Martin. The heart of this case, Your Honors, is the party settlement agreement that was reached back in 1998. The first part of our argument is regarding the breach of the settlement agreement, and that settlement agreement appears in the record at supplemental appendix 207. At 207, the agency agreed that it would not rely on anything prior to August 1, 1997 to find the appellant unsuitable for employment with, at the time, INS, now Department of Homeland Security. But there were loads of problems after the application date, weren't there? Yes, there were, Your Honor. But at least two of the five specifications rely specifically on items that occurred before August 1997, specifically the ones that dealt with dishonesty. The other three specifications dealt with alleged criminal misconduct. The two that I believe are more significant are the ones that deal with dishonesty, and that appears to be the agency's primary cause for finding them unsuitable, since that was never raised in any of the previous suitability determinations. And Mr. Martin had gone through at least three or four previous suitability determinations. But don't these subsequent offenses justify a finding of unsuitability? Wasn't there an accusation of rape? And that was never charged, Your Honor. DUI? There was the one DUI in 2003 that was the more recent DUI, and there were previous DUIs, but the agency had repeatedly found them suitable up until that last DUI, the most recent one being in 2003. So at bottom, what, correct me if I'm wrong, I understand at least one of your complaints is that the agency should have gone back and done a second suitability determination after OPM said they weren't going to do it? Correct, Your Honor. Is that correct? Yes. Why is the agency, what can you point to, something that says that the agency is required to do a second suitability determination under these circumstances? The applicable CFR says that the agency was required to refer to OPM in the first place or to ask OPM for prior approval before it made its own adjudication. It didn't do that. It made its own adjudication. We raised that objection with the administrative judge. The administrative judge says the appellant's correct. Refer it to OPM. OPM looked at it. They declined to exercise jurisdiction. At that point, they gave the agency approval to do its own adjudication. But the agency never did an adjudication once it received approval from OPM. But they had already done one. So what you're suggesting is this case should be reversed because the agency should have gone back and done the same thing it had already done? In part, Your Honor. That's one of our arguments. The more significant argument, though, is the breach of the settlement agreement. The documents indicate that they were not to rely on anything prior to August 1997 in order to find them unsuitable. The two specifications specifically rely on stuff prior to August 1997 and finding them unsuitable. The dishonesty charges. Both the specifications. There were two sets of documents that were involved. One of them was the SF-86 that we submitted in December 1998. The other document is a suitability or security questionnaire that we submitted on November 2, 1998. My understanding of that and the argument, so tell me if I'm missing something, is that the agency's answer to this issue is that they're construing the agreement as allowing them to use Mr. Martin's failure to disclose certain offenses before that time, not just that the offenses. So what they've used is not the offenses, and therefore they're not in violation of the agreement because they're using something other than that, which is the failure to disclose. Is that, are we? That's the agency's argument. Okay, well why isn't that correct? Because Mr. Martin was not required to disclose anything prior to at least December 1988. Under the SF-86, the correspondence in the record at the appendix 206, 208, 210, there's a series of correspondence back and forth that talked about the appellant going back 10 years. Initially we submitted the SF-86, and we indicated on there that it was updated from August 1997 to the present. When it went to the personnel office, the staffing specialist contacted us. They advised us that we had to go back 10 years under the OPM regulations in place at the time. So after some discussion back and forth with the agency's counsel, we submitted a revised FS-86 that went back 10 years to December 1988. So the period of time that they were allowed to look at under the OPM regs was December 1988 to when we submitted in December 1998. And the agreement said that they wouldn't rely on anything prior to 97. So Mr. Martin was not required to disclose anything prior to December 1988, according to the OPM regulations. The agency in this case, they went ahead and cited Mr. Martin for failing to advise them of the 1982 and 1983 incidents, even though under the OPM regulations in place at the time, he was not required to disclose that information. So the agency is in clear breach of the settlement agreement when they relied on those two instances. The other instance regarding the dishonesty has to do with the suitability and security questionnaire that we submitted at the same time in November of 1998. At the top of that form, we clearly marked that it was updated from August 1997. And in our correspondence back and forth with the agency, we also indicated that that form was updated since August 1997. The only objection we had received was to the SF-86. The agency never told us at that time when we submitted them that there was any concerns about the suitability or security questionnaire and that that had to go back either 10 years or had to go back in perpetuity to cover anything that had to do with alcohol-related misconduct. So the form that they're relying on specifically says that it was updated from August 1997 and the agency has gone back and in this case cited the 1983, 1984, 1990, 1992 incidents that should have been excluded under the settlement agreement. But even if you take that off the table, there's clearly a sufficient basis, is there not, for the agency's failure to do this because he didn't currently satisfy the pre-employment requirement? We don't know because he didn't do it correctly. This case is about the breach of the settlement agreement. The agency dismissed the suitability portion of the appeal for lack of jurisdiction. This case has gone forward on the breach of the settlement agreement, which there's a clear breach of the settlement agreement. The two instances where they cite dishonesty clearly go back before August 1997. One of them by the agency's own document says we're only looking at a 10-year time frame from December 1988 to December 1998 when we submit the documents. We're not going to look at anything from 82 or 83, which is what they rely on, and that clearly violates the settlement agreement. The suitability questionnaire, likewise, was an update from 1997, and that was from 97 to the date of submission. The agency went back and cited stuff prior to 1997 as the basis for finding them unsuitable based on the dishonesty. Wouldn't you think that this kind of an agreement would be inimical to the public interest to agree not to pay any attention to any prior crimes or dishonesty or whatever in hiring someone in a position of trust? It's a contract drug. The agency's never raised that issue before, and strict contract law says that the agency has to call the contract. They haven't done it in this case. We've litigated the contract numerous times before the board, and they've never raised that issue. They've always agreed that— I'm raising it. Don't you think it's just on its face? No. Why should the court be party to something like that? Because the agency agreed to it. The agency said from 1997 forward, that's the period of time we're looking at, and as counsel raised in his brief, they were allowed to go back and look at any dishonest conduct, anything that was left out of the disclosures, but there was nothing left out of the disclosures. They could go ahead and do their suitability determination, but they have to follow the settlement agreement. They have to follow the settlement agreement. If there was something that Mr. Mark failed to disclose, they could surely address that, but as far as any of the alleged criminal misconduct, that's something that they're limited to for the time of the documents, and they're not allowed to rely on anything from prior to 1997. I believe I touched on Your Honor's question about the suitability questionnaire. I'm sorry. As far as the dishonest conduct, the applicable CFR does clearly say that the agency either has to refer it to OPM or ask OPM for prior permission to adjudicate it on its own. It didn't do that in this case. The settlement agreement further requires the agency to do a suitability determination and background investigation, and we think that means do it correctly. In this case, close isn't good enough. They're supposed to do it by the book. They didn't do it by the book in this case, so we'd ask the court to reverse the board's decision. Is that right? I mean, isn't there a harmless error doctrine that would apply here? So, they reinstated what they had done. If they had gone back and just put a new date on it and reversed it, I mean, there's no indication that there would have been any difference in the suitability determination they did before they went to OPM as opposed to after. So, what do we care if, you know, as a technical basis, they used the same one they did before? Because they haven't made a lawful adjudication yet, Your Honor. Because they haven't done what? They have not made a lawful adjudication as of this date. They've never taken any action after OPM delegated jurisdiction to them to rule on that issue. So, you're saying that it's not a, they haven't made, they took this action without making a suitability determination? Correct. They made a suitability determination that they didn't have authorization to make. They didn't have authorization to make that suitability determination until OPM declined to adjudicate those charges. So, they have not made a lawful suitability adjudication to date. The only thing in the record is that the agency's attorney said after, you know, it was remanded by the board that our old adjudication stamps. There's nothing from the personnel officer to say that they ever looked at it again aside from the agency's attorney. So, let's assume we were to say you're right on that but not to buy your arguments with respect to the other issues. So, we would send it back and is there any, and the agency would be free to do the suitability determination now again. Yes, Your Honor. Reaffirming it and the case would be over, correct? So long as they don't breach a settlement agreement or rely on something prior to 97. Thank you, Your Honor. May it please the court. In this case, the board on June 20, 2005 rejected Mr. Martin's claim that the agency failed to comply with July 19, 2004 order and the party's 1997 settlement agreement. The board decision was correct and should be affirmed. First, a new suitability determination was not required. What about the regulations at the other side of the site? Well, the regulations require that certain types of suitability determinations be referred to OPM but OPM rejected jurisdiction saying that the, I guess it was 1983 and 1984 matters. It did not consider them material and therefore kicked it back to the agency and the agency just allowed its previous determination to stand. There's nothing wrong with that. Nothing changed between… Well, the question as I understand it or the argument is that the agency doesn't have the authority, I guess, to do a suitability determination until unless OPM tells them to go ahead and do it. And in this case, the agency did not do a suitability determination after OPM said they should do it. They did it before. Am I right so far? That's Mr. Martin's argument, yes. Well, what's wrong with that? Why is that argument not correct? Well, because the, first of all, the OPM found that it didn't have jurisdiction so that it did not fall into that category of claim that it had jurisdiction over and it also said… So you're saying that regulation doesn't apply. Well, OPM found that it didn't apply. On page 190 of the joint appendix, it says the Office of Personal Management recently reviewed the investigation conducted on a subject to determine the materiality of the false statement contained within the investigation. The false statement is present in the investigation. However, it does not meet the definition of material based on the guidelines outlined in OPM's published suitability adjudication regulations. Your agency may consider this false statement to be a potential issue, though, and can adjudicate based on 5 CFR 731.202B2, criminal or dishonest conduct, which is exactly what the agency adjudicated based upon. However, Your Honor also mentioned something when counsel was arguing. Even if there was some sort of a technical mistake here, that would be a best harmless error because the MSPB regulations only permit outcome determinative errors to be the basis for overturning agency action. So as far as the suitability argument goes, first, there was nothing wrong with what the agency did, and secondly, even if there was a technical error, it was harmless. Okay, well, then that begs the next issue, which is the reliance on the pre-1997, and you heard what is your response to the arguments made on behalf of Mr. Martin with respect to the propriety of using that prior information? Yes, the settlement agreement did not excuse Mr. Martin from disclosing the pre-August 1st 1997 incidents. It merely stated that they couldn't actually use the incidents themselves as a ground for denying him suitability. In other words, he still had to disclose it. Right, but he claims that you, I mean, you heard what he said, and you've read the briefs that there was appropriate disclosure in all those forms that he filed. There was not. One argument that counsel makes is that they were not permitted to go back beyond 10 years before, so they couldn't go back beyond something like, yes, 88. However, I point out, and this is very important, it was not raised in the administrative proceedings and was not raised in the opening brief, so that argument is not properly before this court. However, it should also be noted that the documents cited in the appendix that discuss that 10-year period take things out of context because they were only talking about one form, that SF-86 form, but there were others where similar information was not disclosed. However, the court should simply not consider arguments raised for the first time in a reply brief that were not only not raised in the opening brief, but were not even raised below. Well, and below, wasn't he arguing that they breached the 1997 agreement, or was the sole basis he was arguing they breached it? Below, he argued that you could not go back anywhere before 1997, before August 1st, 1997. That was his argument below. Today, in his reply brief, he's arguing that even if you could go back before 1997, you couldn't go back before 1988, and that's a second argument that was not raised below and the court should not consider at all. Let me ask you both. Judge Mayer raised the issue of whether or not the settlement agreement is valid in and of itself. I mean, here we have a government agency that is in effect entering into a settlement agreement saying no matter what you did before a certain time, criminal, not criminal, whatever, we're never going to consider it in terms of appointing you to a sensitive position. What's going on here? I don't know why they entered into such an agreement, and I'm assuming that it's based on information they at least knew at the time. There was some information disclosed, perhaps, and if they had that before them, they could say, okay, we're not going to rely on that particular 1990, whatever it is, DUI, because that's before them. However, obviously, if he didn't disclose something and then it later turned up that there was some sort of heinous crime or something, I think public policy would not require the government to be bound by that. But here, you know, we've not made... But here your point is that there were issues. I mean, forget they weren't heinous crimes. I'm not suggesting that. But your point is that you don't have to rely on the settlement agreement because you don't have to rely on things that were not disclosed. So that's precisely what you're arguing here, no? Right. The argument is that regardless of whether Mr. Martin, whether his prior 1982-83 incidents can be considered on their merits, the agency surely can consider the failure to disclose them, and that's all they did. They didn't consider them on their merits. They considered the failure to disclose them as well as some other very serious charges and a conviction and an arrest and conviction for DUI in 2003. So, you know, sort of like if you're required to file your tax returns and you're working, you have your withholding, and you don't owe any taxes and the government doesn't owe you any refund, that doesn't mean you don't have to file your tax return. Same thing here. Just because you can't use the acts themselves doesn't mean that he doesn't have an affirmative duty to tell the government about them. But he says he did, right? I guess, no, I don't think he's saying that he disclosed those 83 and 84 incidents. Oh, the ones before, okay. And the other thing is that those 83 and 84 incidents, you know, were fairly minor because they were remote in time and because the government did not use the substance of those against him. And there's also a failure... So are you suggesting that even if we were to decide that the government could not appropriately have gone back before 97, that we should affirm nonetheless because of the egregious conduct post-97? Yes, there's... Is there anything in the record to show whether the agency would have indeed taken the steps it did in making the suitability determination on just those post-97 incidents? I don't believe so because the... So doesn't our case law require that there be some indication if we're going to affirm based on just part of what the agency relied on? Doesn't our case law require that we have something, some indication that the agency would have done the same thing on just that isolated conduct? If not, don't we have to send it back? Well, I think where the court can see that these are relatively minor, and there's a case we cite in our brief guise, which was not a suitability claim, but it was a regular run-of-the-mill MSPB appeal, where the majority of charges are sustained, unsustained charges are relatively minor compared to sustained charges, and there's no indication that the agency would have adopted a different penalty in the absence of unsustained charges, penalty upheld without need for remand, because the inquiry is akin to harmless error. So the court could still apply a harmless error here. However, that's sort of a hypothetical argument because it's our position that nothing in the 1997-1998 settlement agreement prevented the government from considering the failure to disclose. So your earlier argument that there were these other offenses that occurred in the 80s were relatively minor and they were a long time ago, there's no problem with the government agreeing not to consider them. What if they were charges like are alleged after the 90s, rape and sodomy and traffic charges that wasn't conclusively proven? Assume it was. Does that make a difference if they agreed to not consider that in a hiring determination? Does that make it still an enforceable contract? Well, I think that if there was some egregious crime that had been committed, and I can only speculate— How do you define that? Pardon me, Your Honor? How do you define that? Well, I mean, if that was not disclosed, if it had not been disclosed, what I'm assuming is that— What Judge Mayer is asking, if the alleged rape charge was disclosed, had been disclosed, but the agency made the agreement nonetheless not to rely on it, should that contract have been binding? That's—what I'm assuming is that had such a charge been disclosed, it would have never made the agreement to begin with, so it's speculation on what the agency would do. Well, we don't know that. There's settlement agreements. Yes. We don't know what they're doing. This seems like—this happens with some regularity. We're not talking about just this case, and we don't know what they're doing out there. Why should that kind of a case, no matter whether they want to enter into it or not, that's one thing. That's an executive decision, I guess. Why should something like that be enforceable in the courts? Yes, there's—I don't know the answer because we haven't looked into that issue, and we didn't raise that argument below. However, it does make sense that— Well, I think it's something that the court could raise in the first instance. I think it's a direct impact on the positions of the court, position of the court in the system. Yes. I suppose if something is against public policy as a matter of law, I suppose the court could raise that, especially there's been September 11th in between here, and that could change the whole context of how the agencies approached these types of issues. I think we do have some case law. I don't know. I can't—that deals with that. Are you familiar with any of the cases where we say— I think it's with connection with when you agree to have someone resign rather than discharging them, and you agree that you're not going to disclose certain conduct that they've been—you assume they are guilty of in connection with the settling and getting a voluntary retirement. I think we've got some case law that does draw a line as to what an agency can bind itself, or at least what we're going to enforce in terms of an agency binding itself not to disclose. Are you familiar with any of those cases?  Because I just did not—we just had not raised that issue. Finally, I don't believe that Mr. Martin addressed this issue, but he did address it in his brief, and I'm thinking we talked about an oral argument that Mr. Martin should be treated as if he were an employee, and our response to that— Yeah, but if he didn't discuss it this morning, we don't need to hear about it. Yes. I was going to say we rely on our brief, and as far as the sanctions issue, again, we rely on our brief. In conclusion, we ask that the Court affirm the decision of the Board. Thank you. Thank you. Mr. Beranek? Thank you, Your Honor. Just briefly. I just want to direct the Court's attention back to Appendix 190. I just want to direct your attention to the next sentence where Mr. Schroeder left off. The next sentence says, Mr. Schroeder initially said that OPM did not have jurisdiction over that issue. That was their finding. That's not true. OPM declined to exercise jurisdiction. The CFR required the agency to refer the matter to OPM in the first place. They didn't, and only after the fact could OPM refer it back to the agency for its own adjudication. So OPM did have jurisdiction. They just declined to exercise it in this case and then referred it back to the agency. So to date, the agency still has not issued a proper adjudication of the security clearance— or, excuse me, of the suitability determination. As far as the incidents that happened back in 1983 and 1984, counsel suggested that they might be minor because they were remote in time. That's not the position taken by the suitability determination letter. The suitability determination letter does not rely on the DUIs per se. It relies on the fact that they weren't disclosed, and that is alleged dishonest misconduct. That was the basis for the suitability determination for those two charges, the alleged dishonesty. And in this post-9-11 world, working for Department of Homeland Security as a customs and border protection officer, of course, honest conduct is something that's important. That's why I believe the basis for the suitability determination was the alleged dishonest misconduct, the failure to disclose the 1983 and 1984 incidents, which, again, we don't believe he was required to disclose, either by the terms of the settlement agreement or by the terms of OPM's regulation. Did you raise that? I mean, the government's attorney said that you've raised that for the first time. It was not raised in the administrative proceedings. We've raised the fact that Mr. Martin was not required to disclose that information from the get-go, from the initial filing with the board in the administrative judge's ruling through the board and with this court. The first time the agency had raised the tenure issue was in its brief addressed in our reply. But we have been raising from the get-go that Mr. Martin was not required to disclose anything, particularly incidents that happened in 1982 and 1983. But that was because of the settlement agreement, not because of OPM regulation, correct? Correct. So in this case, again, going back to the 1982 and 1983 incidents, the allegation is dishonesty. That was the basis for the suitability determination, and the agency is clearly not allowed to go back to the 1983 and 1984 incidents under the terms of the settlement agreement. Just to touch on the arrest for the rape allegation, again, he was never charged with anything in that case, and the agency, in fact, found him suitable after that. They found him suitable, and it was only when the DUI case came up a year later that they determined that he was not suitable, and the, quote, new information that came about was the alleged dishonesty. I'm relating back to the failure to disclose the information in the initial SF-86 and in the suitability questionnaire. And just to touch on Your Honor's question as far as whether the issue is void for public policy concerns, if the court is inclined to go that route, we would ask the opportunity to brief that issue, since this is the first time that we've been privy to that issue, that that was a concern of the court. Thank you, Your Honors. Thank you. The case is submitted.